UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SALIK STEVENS**,

    Petitioner,

v.   Case No. 8:23-cv-310-WFJ-AEP
    Crim. Case No. 8:17-cr-507-WFJ-AEP

**UNITED STATES OF AMERICA**,

    Respondent.
_____/

## AMENDED ORDER

Before the Court is Salik Stevens's ("Petitioner") Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Civ. Dkt. 7).[1] The United States of America ("Respondent") has responded in opposition (Civ. Dkt. 17). Upon careful review, the Court finds an evidentiary hearing unnecessary and denies Petitioner's Amended Motion.

## BACKGROUND

On February 27, 2018, a federal grand jury in the Middle District of Florida returned a ten-count Second Superseding Indictment against multiple defendants for drug-related charges. Cr. Dkt. 62. The defendants operated a drug trafficking

---

[1] The Court will cite to the instant civil case as "Civ. Dkt. [document number]" and the underlying criminal case, 8:17-cr-507-WFJ-AEP-4, as "Cr. Dkt. [document number]." Additionally, this Amended Order is entered to correct scrivener's or clerical errors only and does not restart the time for an appeal. *See* Fed. R. Civ. P. 60(a); *Phuc Quang Le v. Humphrey*, 703 F. App'x 830, 836 (11th Cir. 2017). As such, these corrections "do not affect the underlying judgment, and, consistent therewith, do not affect the time for filing a notice of appeal." *In re Cobb*, 750 F.2d 477, 479 (5th Cir. 1985).

organization ("DTO") that distributed heroin, fentanyl, and fentanyl analogues in Polk County, Florida. A series of investigations regarding fatal overdoses in Polk County led to the conclusion that the defendants' drugs caused the death of four victims and serious bodily harm to another victim.

Among the indicted defendants was Salik Stevens, who ultimately plead guilty to Count One of the Second Superseding Indictment on August 6, 2018, in front of Magistrate Judge Anthony E. Porcelli.[2] Cr. Dkt. 239.  Count One states:

> Beginning on an unknown date, but not later than or around March 2016, and continuing through on or about August 30, 2017, in the Middle District of Florida, and elsewhere, the defendants [listed] did knowingly, willfully, and intentionally conspire with each other and other persons, both known and unknown to the Grand Jury, to distribute and to possess with the intent to distribute controlled substances, the use of which resulted in the deaths of T.C., D.K., Y.C., and J.A. from such substance, and the serious bodily injury of H.C. from such substance; which violation involved one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance; four-hundred grams or more of a mixture and substance containing a detectable amount of ("fentanyl"), a Schedule II controlled substance; and one hundred grams or more of a mixture and substance containing a detectable amount of . . . ("fentanyl"), a Schedule II controlled substance, and is therefore punished under 21 U.S.C. §§ 841(b)(1)(A)(i), (vi), and (b)(1)(C). All in violation of 21 U.S.C. § 846.

Cr. Dkt. 62.

After fully reviewing the facts and evidence of the case with counsel, Petitioner, at his change-of-plea hearing, admitted to the facts underlying his plea

---

[2] District Judge James D. Whittemore accepted Petitioner's guilty plea on August 23, 2018.

2

agreement including the fact that "but for the victims ingesting the controlled substances, the victims would not have died." Civ. Dkt. 17-1 (plea transcript) at 37, 39. Petitioner also expressed his understanding of the rights he was waiving in addition to stating his satisfaction with counsel.

Petitioner testified at this plea colloquy that he had a full and fair opportunity to review all the facts and evidence in consultation with counsel and did not need additional time. Petitioner also testified that his attorney had done all asked of him, and that he was fully satisfied with the advice and representation he had received. Civ. Dkt. 17-1 at 11. At the end of the colloquy, Petitioner pled guilty to a conspiracy to distribute heroin and fentanyl resulting in death or serious bodily injury, swearing he was in fact guilty of the crime. *Id*. at 55. The Court subsequently accepted Petitioner's plea, finding that he was entering into the guilty plea both freely and voluntarily with the advice of counsel. Cr. Dkt. 285.

Prior to sentencing, the United States Probation Office produced a Presentence Investigation Report ("PSR"). Cr. Dkt. 330. The total offense level was 43 with a criminal history category of VI. *Id.* at 34. After the Court determined that Petitioner's total offense level was properly scored at 41, Petitioner was left with an advisory range of 360 months to life. Cr. Dkt. 405 at 1. The Court departed and varied downward five points and imposed a sentence of 336 months' imprisonment. Cr. Dkt. 404.

Petitioner filed his § 2255 motion to vacate on February 10, 2023. Civ. Dkt. 1. He amended it with leave of court on March 13, 2023. Civ. Dkt. 7. Therein, Petitioner asserts the following grounds for filing an amended petition:

> (1) Violation of "*Brady* Rule"—withholding of exculpatory evidence;
> (2) Government failed to establish a "but for" cause of death;
> (3) Trial counsel rendered ineffective assistance allowing Petitioner to plead guilty without informing him of the fact that there was no "but for" cause finding;
> (4) Government withheld autopsy reports which proved that the victims did not die as a result of drugs supplied by Petitioner; and
> (5) sentence disparity . . . .

*Id*. at 5–7.

Petitioner's grounds amount to three overarching claims: (1) Respondent withheld exculpatory evidence regarding deceased victims' cause of death; (2) Petitioner received ineffective assistance of counsel related to the causes of death; and (3) Petitioner received a sentence that is unconstitutionally disparate when compared to Petitioner's codefendant. *Id*. Based on these grounds, Petitioner seeks an evidentiary hearing with the Court.

Respondent opposes all grounds within Petitioner's Motion, challenging the timeliness of the Motion's filing as well as the merits of the case. The Court will address each issue in turn.

## STANDARD OF REVIEW

On collateral review, the petitioner "has the burden of proof and persuasion on all the elements of his claim." In re *Moore*, 830 F.3d 1268, 1272 (11th Cir. 2016).

This is "a significantly higher hurdle than would exist on direct appeal," *United States v. Frady*, 456 U.S. 152, 164–66 (1982); for, "[w]hen the process of direct review . . . end[s], a presumption of finality and legality attaches to the conviction and sentence" at issue. *Moore*, 830 F.3d at 1272 (citations omitted). "[I]f the Court cannot tell one way or the other" whether the petitioner's claim is valid, the petitioner has "failed to carry his burden of showing all that is necessary to warrant § 2255 relief." *Id.* at 1273.

## DISCUSSION

### I. Timeliness

Petitioner's Amended Motion is untimely. Generally, criminal convictions become final when the deadline for filing a direct appeal passes, which in this case was December 18, 2018. *Akins v. United States*, 204 F.3d 1086, 1089 n.1 (11th Cir. 2000). Once a conviction becomes final, the petitioner has one year to file a federal habeas petition. 28 U.S.C. § 2255(f)(1). Here, Petitioner's § 2255 Motion and Amended Motion were filed in February 2023 and March 2023, respectively. Thus, because Petitioner filed these motions more than four years past the deadline for filing direct appeals, Petitioner's Amended Motion is barred absent an exception.

No exception applies under § 2255(f)(2). A petitioner may overcome, pursuant to § 2255(f)(2), the deadline if the petitioner establishes that a government impediment "caused an actual harm . . . or prevented him from exercising that

fundamental right of access to the courts in order to attack his sentence." *Akins*, 204 F.3d at 1090. If the impediment claim is found to be substantiated, a one-year clock for filing a § 2255 motion begins from the date in which supporting facts could have been discovered through due diligence. *Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002).

Petitioner claims that, in 2022, he "came across newly discovered evidence of autopsy reports from 'the Office of the Medical Examiner.'" Civ. Dkt. 7 at 9. Petitioner claims that Respondent impeded Petitioner's criminal charges by not sharing the autopsy reports with Petitioner and Petitioner's counsel, especially since the autopsy reports do not contain explicit "but-for causation" language. Based on Petitioner's view, the one-year deadline for filing a § 2255 motion began when Petitioner discovered the autopsy reports, which was in August 2022. Civ. Dkt. 1-9.

The Court disagrees. The alleged exculpatory medical evidence is language within toxicology reports of deceased victims. Petitioner claims that (1) the toxicology reports were withheld from him and (2) the reports do not state "but for causation" language with respect to Petitioner's narcotics sales and the deceased victims' causes of death. Reliable records show that Petitioner's counsel received the deceased victims' toxicology reports during discovery in 2018. Cr. Dkts. 594, 597. Petitioner, at his change-of-plea hearing, stated that he reviewed all documents relating to this case. Additionally, as discussed below, the discovery shows

Petitioner's conduct contributed to the specific deaths he was sentenced for, and the other deaths and injuries were reasonably foreseeable acts by coconspirators. Because these issues are central to both timeliness and merits of the Petition, the Court discusses them now, as follows:

As with most of the earlier fentanyl cases, the vendors and users of the drug thought it was heroin, but it turned out to be fentanyl.[3] The gravamen or main basis for relief cited by Mr. Stevens is that autopsy reports show the decedents were not killed by fentanyl. And this counsel was ineffective in not addressing this. At sentencing Judge Whittemore stated, "Mr. Stevens is directly linked to the deaths of at least two people, T.C. and D.K., as summarized in [PSR] paragraphs 29 and 37 . . . . You set in motion the events which lead to at least two deaths." Civ. Dkt. 29-1 (sentencing transcript) at 67.

The autopsy report for T.C. shows the cause of death to be furanylfentanyl intoxication. Civ. Dkt. 27 at 1. This was produced in case discovery. Nothing was missed here, and T.C.'s death alone would support the sentence and guideline range. Mr. Stevens was the source of the fentanyl that was T.C.'s cause of death as Mr. Stevens admitted in July 2018. Cr. Dkt. 216 at 23; Civ. Dkt. 17-1 at 43, 56–58.

---

[3] The Court has now noticed that in the recent cases, the vendors and consumers seem to be more aware of the fentanyl presence and its danger.

The autopsy report for D.K. shows that heroin and furanylfentanyl were in her urine as well as other drugs in her urine and blood. Civ. Dkt. 27-1 at 1, 5. Her cause of death was "multiple drug intoxication." *Id*. Consistent with the conflation of heroin and fentanyl, the autopsy stated that "[a]n open bag of Heroin, 2 full bags of Heroin, a spoon, and an unknown pill were found alongside her body." The bags of heroin were the "Kill Bill" labeled brand. "Kill Bill" bags that were seized from D.K.'s source three days after her death contained heroin and fentanyl. Cr. Dkt. 216 at 26. And D.K.'s source got these drugs from Petitioner Stevens. *Id*. at 26–27. One bag had Petitioner's fingerprint on it and prior to D.K.'s death, D.K.'s source called Petitioner twice that day. *Id*.[4] There were other fentanyl deaths in this conspiracy that were reasonably foreseeable as well.

All of the facts show clearly that, even if Mr. Stevens could prove some delay in discovery (and none is apparent in this record), the material facts were well known before sentencing and were admitted to by Mr. Stevens or found by the Court without objection.

---

[4] These facts are in the signed plea agreement. Cr. Dkt. 216. At the plea colloquy, Petitioner's counsel stated that Petitioner supplied only the empty "Kill Bill" heroin bags, not the contents of the "Kill Bill" bag that killed D.K. Civ. Dkt. 17-1 at 56. This was no doubt a strategy to account for Petitioner's fingerprint on the "Kill Bill" bag. However, the sentencing judge found Petitioner supplied the content of the bag (Cr. Dkt. 386 ¶ 37), a finding that Petitioner did not appeal. Even supplying just empty "Kill Bill" heroin bags to D.K.'s source shows participation in a foreseeable distribution conspiracy.

8

The long delay in filing this Petition might be warranted if Petitioner demonstrated that (1) he was diligently pursing his rights to file a claim; (2) an extraordinary circumstance prevented Petitioner's timely filing; and (3) the alleged delayed information was material to the petition. These steps are not satisfied.

On the issue of diligence, Petitioner in January 2021 filed an "intention to file his 2255." Cr. Dkt. 558. His first 2255 motion was filed 25 months later in February 2023. Cr. Dkt. 613.

Also diligence is not shown because Petitioner asserts these same grounds in March 2022 in a motion for compassionate release (Cr. Dkt. 591) but then waited over 11 months to include them in his 2255 petition. Cr. Dkt. 613. By that date the Petition was already well out of time.

Also related to diligence, the filings show Petitioner solicited a declaration in favor of the Petition that was dated January 2022 (Civ. Dkt. 1-5) but filed the Petition 13 months later, citing this declaration as partial grounds. In short, the Petition is filed years late, with no good grounds or diligence stated or existing for the delay.

## II. Merits

Despite the untimeliness of Petitioner's amended motion, the Court also finds meritless Petitioner's asserted grounds for relief.

### A. The Government's Alleged Withholding of Exculpatory Evidence

Petitioner brings a *Brady*[5] claim, alleging that Respondent withheld evidence favorable to Petitioner's defense and knowingly presented false and misleading evidence to the court before and during Petitioner's change-of-plea hearing. Petitioner asserts that Respondent withheld the deceased victims' toxicology reports that disproves his culpability regarding the death of the victims. Petitioner further asserts that the withheld evidence would have significantly and materially supported his defense and altered his decision to plead guilty.

To succeed on a *Brady* claim, a petitioner must prove that (1) Respondent possessed evidence that was favorable to Petitioner; (2) Petitioner did not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) Respondent suppressed the evidence; and (4) there is a reasonable probability that the outcome would have been different if the evidence was disclosed to Petitioner. *United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002). Petitioner failed to prove these elements.

The evidence at issue here is the toxicology reports of three victims. These reports, however, are not favorable to Petitioner. Petitioner correctly claims that these reports do not explicitly contain the words "but-for causation" in relation to Petitioner's products and the victims' causes of death, but medical examiners often use other diction and syntax structures to describe causes of death. *See Burrage v.*

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

*United States*, 571 U.S. 204, 211 (2014) (explaining that the "but-for requirement is part of the common understanding of cause" and can thus be inferred from other language within toxicology reports).

As for the second and third elements of Petitioner's *Brady* claim, Petitioner alleges he did not receive the toxicology reports from Respondent or Petitioner's counsel. However, Petitioner swore at his change-of-plea hearing to reviewing all evidence and documents regarding his case (Cr. Dkts. 216, 284). The discovery indexes produced by the Government include these reports. Cr. Dkt. 594. The sentencing transcript (Civ. Dkt. 29-1) and facts discussed above show that all parties were apprised of the toxicology that was material to Petitioner's sentence.

Even if the toxicology reports were not fully discussed by counsel and discussed with Petitioner, moreover, there is no reasonable probability that the outcome in Petitioner's criminal case would have differed. The toxicology reports that were material to the sentencing were not favorable to Petitioner nor the sole evidence Respondent possessed in this wide and multi-defendant (and deadly) conspiracy. The bases for Petitioner's sentence were well disclosed and aired out prior to and at sentencing, as discussed above.

### B. Sentence Disparity

Petitioner also claims that his sentence being served is unconstitutional since Petitioner's co-defendant was sentenced to less imprisonment. Under *Spencer v.*

11

*United States*, 773 F.3d 1132, 1139 (11th Cir. 2014) (*en banc*), a miscarriage of justice regarding imposing a sentence does not exist when the imposed sentence is below the statutory maximum.

Here, Petitioner's imposed sentence is well below the statutory maximum, benefitted from a 5-point downward departure/variance, and was the fruit of a terrible prior record and active, large-scale heroin/fentanyl trafficking. It is thus valid irrespective of his co-defendant's sentence. Further, the guidelines calculations and presentence investigation report are not alleged faulty. The sentencing judge was careful. *See* Civ. Dkt. 29-1. There is no evidence in this case to suggest the contrary or that Petitioner was unfairly sentenced.

### C. Ineffective Assistance of Counsel

The Court now turns to Petitioner's ineffective assistance of counsel claim. Counsel is ineffective under the Sixth Amendment if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A petitioner claiming ineffective assistance of counsel carries the burden of establishing both prongs. *Strickland*, 466 U.S. at 687.

To establish ineffective assistance under *Strickland*, a petitioner must demonstrate that counsel's performance "fell below an objective standard of

12

reasonableness." *Id.* at 688. The test is not "what the best lawyers" or "what most good lawyers would have done." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992). Rather, the question is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Id.*

To establish resulting prejudice under *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If the petitioner fails to establish either of the *Strickland* prongs, Petitioner's claim fails. *See Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1319 (11th Cir. 2005).

Petitioner first argues that his counsel was ineffective for advising Petitioner to enter a guilty plea when the deceased victims' toxicology reports did not contain express "but-for causation" language. Given the foregoing discussion regarding "but-for causation" language in toxicology reports, this claim is meritless.

Federal law requires a defendant's counsel to "'communicate to the defendant the terms of the plea offer . . . [and] inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed.'" *Aguilar v. Sec'y, Dep't of Corr.*, No. 6:07-cv-101-Orl-31JGK, 2008 WL 5142411 at *7 (M.D. Fla. Dec. 5, 2008) (quoting *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000)). Petitioner's counsel in the instant case did

13

discuss the plea offer with Petitioner, satisfying the representational requirements set forth by *Strickland*.

Petitioner also argues that counsel was ineffective for failing to call a defense witness ("Martin"), yet "no absolute duty exists to investigate a particular line of defense." *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). The petitioner's counsel in *Williamson* acted objectively reasonably despite choosing to not call a defense witness. *Id.* Whether a defense is asserted by counsel is a strategic decision that involves several considerations. In *Williamson*, for example, the Court noted that counsel may not have called a particular defense witness because the strategy behind calling that witness may have had a low success rate track record. *Id.* Other reasons the Court states for counsel's strategic reasoning to not call the defense witness were that counsel was attempting to avoid introducing potential inconsistent and cross-examination statements on the record as well as striving to maintain honest and credible testimonies within the case. *Id*.

Martin is presented in this Petition (Civ. Dkt. 1-4) by Martin's declaration. He relates, as a jailed coconspirator, various matters he overheard while incarcerated. Some of this information is materially different than that which Petitioner agreed to in his plea. Some of it contradicts the plain facts in the case. The declaration implicates Petitioner in the heroin trade. In the present case, Petitioner offers no reason to believe that counsel's decision not to call Martin as a defense witness was

unreasonable. On the facts, Martin's credibility is middling at best. This is especially so given that a successful jury verdict in this matter was <u>highly</u> unlikely. Petitioner shows no prejudice.

The Court has undertaken an extensive review of this record. The evidence against Petitioner was overwhelming and included his fingerprint on a fentanyl/heroin packet, direct testimony, seizures of evidence, direct surveillance and "buys," *etc*. The lawyering by Petitioner's counsel on this record is shown to be thorough and effective.

Petitioner did not meet his burden of proof to establish ineffective assistance of counsel. Counsel provided Petitioner with adequate performance that fell within the *Strickland* standards. The decision to not call Martin as a defense witness was neither deficient conduct nor did it prejudice Petitioner, given the extensive amount of credible evidence present. Petitioner is entitled to no relief on this ground.

### III.   Evidentiary Hearing and Certificate of Appealability ("COA")

For the foregoing reasons, an evidentiary hearing in this matter is unnecessary. Petitioner is not entitled to an evidentiary hearing. "A petitioner is entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (internal quotations and citations omitted). "[A] district court is not required to hold an

15

evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous[.]" *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (citation omitted).

Here, even if Petitioner timely filed this Amended Petition, all of Petitioner's claims lack merit. Petitioner failed to demonstrate sufficient facts to substantiate his claim of counsel's deficiency or establish prejudice resulting from counsel's performance. Thus, Petitioner is not entitled to relief, and summary dismissal is appropriate. *See Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002) (finding that "a district court faced with a § 2255 motion may make an order for its summary dismissal [i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief").

Petitioner is similarly not entitled to a COA. A petitioner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." Petitioner has made no such showing. Petitioner is therefore entitled to neither a certificate of appealability nor to proceed on appeal *in forma pauperis*.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence (Civ. Dkt. 7) is **DENIED**.

(2) A certificate of appealability and leave to appeal *in forma pauperis* is **DENIED**.

(3) The case is closed.

**DONE AND ORDERED** at Tampa, Florida, on December 15, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Petitioner, *pro se*